IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02182-WYD

LEANN BONILLA,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security[1],

     Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental security income ["SSI"]. For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.   BACKGROUND

Plaintiff, born on November 25, 1963, filed for DIB and SSI benefits in September 2008. (Transcript ["Tr."] 16, 37, 187-197.) Disability was initially alleged to have begun on November 27, 2006. (*Id.* 187-197.) After Plaintiff's applications were denied, she requested a hearing before an administrative law judge ["ALJ"]. (*Id.* 99-100). A hearing was set for December 2010 but was continued for proper development of the record. (*Id.* 34-74). A second hearing was held in March 2011, at which time Plaintiff amended

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

her alleged onset date to May 17, 2010. (*Id.* 34-74.) Following the hearing, the ALJ issued a decision on April 21, 2011, finding that Plaintiff was not disabled. (*Id.* 13-33.)

More specifically, at step one of the sequential evaluation required by law the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of May 17, 2010. (Tr. 18). At step two, the ALJ determined that Plaintiff had severe impairments of obesity, degenerative arthritis of the right knee, left elbow impairment - epicondylitis (inflammation), carpal tunnel syndrome, diabetes, major depressive disorder, and generalized anxiety disorder. (*Id.* 18-19.) At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of any of the listed impairments. (*Id.* 19-21.)

The ALJ then assessed Plaintiff's residual functional capacity. The ALJ found that Plaintiff could perform sedentary work with certain non-exertional physical limitations and understanding, remembering, and carrying out only simple instructions; adapting to only simple changes in routine work settings no more than on a weekly basis; and having no more than superficial interaction with the public. (Tr. 21-26.)

At step four, the ALJ found that Plaintiff could not return to her past relevant work as a child care provider. (Tr. 19.) At step five, however, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (*Id.* 26-27.) Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.* 27.)

As to Plaintiff's mental impairments which are at issue in this appeal, the ALJ gave "great weight" to the opinion of state agency physician Dr. James Dyde as he found it was "supported by the medical record of evidence as a whole" and a "detailed

explanation . . .with citations to the record." (Tr. 20.) Dr. Dyde assessed that Plaintiff was moderately limited or not significantly limited in all areas of assessment, and opined that Plaintiff could follow simple instructions, sustain ordinary routines, and make simple work related decisions. (*Id.* 348). He found that while Plaintiff could not work closely with supervisors or coworkers, she could accept supervision and relate to coworkers if contact was not frequent or prolonged (Tr. 348). Plaintiff should not, however work with the general public. (*Id.* 348). The ALJ gave "little weight" to the work capacity evaluation completed by Eric Imbody, MA, LPC, and signed by supervising psychiatrist Dr. Frieder, which found marked or extreme limitations in all areas of mental functioning. (*Id.* 25.) He also rejected the opinion of Dr. Thye, Ph.D. which also found marked and extreme limitations. (*Id.*)

On July 19, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), making the ALJ's June 2010 decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

II. ANALYSIS

A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner in reaching my decision.

### B. Whether the ALJ's Decision is Supported by Substantial Evidence and Free of Legal Error

Plaintiff argues that the ALJ erred in his consideration of Dr. Frieder's opinion regarding her mental impairments.  She also argues that the ALJ failed to address the testimony from her daughter, Christy Valdez, and applied an improper legal standard by analyzing the lay witness statements under Federal Rule of Evidence 701.

#### 1. The Durational Requirement

Before addressing the merits of Plaintiff's arguments, I address the Commissioner's argument that Plaintiff's mental impairments are not disabling because

there is no evidence that they meet the 12 month durational requirement. It should be noted on that issue that "[a]t step two of the evaluation process, a claimant must show that he has a 'severe' impairment or combination of impairments 'that meets the duration requirement in § 404.1509 [416.909].'" *Moore v. Astrue*, No. 09-2365, 2010 WL 2044660, *3 (D. Kan. April 27, 2010) (citing 20 C.F.R. §§ 404 .1520(a)(4)(ii), 416.920(a)(4)(ii)). Here, the ALJ found only that Plaintiff's necrotizing fasciitis did not meet the duration requirement (Tr. 19); he made no such finding as to Plaintiff's mental impairments. Thus, the Commissioner's argument that Plaintiff's mental impairments do not meet the duration requirement is an improper post hoc argument.[2]

The ALJ did, however, state that Plaintiff's mental impairments were exacerbated temporarily after her hospitalization in May 2010 and that "there is no evidence to support that this temporary exacerbation of her symptoms will last for more than 12 months now that the claimant is seeking treatment and has been started on medications." (Tr. 24.) I find that this is speculation and is not supported by substantial evidence. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("An ALJ may not make speculative inferences . . . and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*.'") (quotation omitted) (emphasis in original). While the Commissioner points to testimony at the hearing of the medical

---

[2] Further, I note that the record shows that Plaintiff was hospitalized for thoughts of suicide and diagnosed with depression with suicidal ideation in the fall of 2008 (Tr. 367, 379-80) and continued to experience symptoms of depression and anxiety in 2009. (*Id.* 535, 538.) Thus, Plaintiff's mental health impairments were documented to have existed for over 12 months.

expert, Dr. Boyce, his testimony does not support the ALJ's finding. Dr. Boyce noted only that it was possible symptoms from Plaintiff's intubation at the hospital could be transient and not last 12 months (Tr. 44-45). He did not testify regarding the mental impairments found in the medical opinions in this case or how long they had lasted or were expected to last. Even as to the symptoms from intubation, Dr. Boyce testified that there was no way to evaluate how long the symptoms would last other than through "a thorough neuropsychological evaluation to determine one's functionality." (*Id.* 45.) I now turn to Plaintiff's arguments.

> 2. Whether the ALJ Erred in Regard to the Weighing of the Medical Evidence, Including Dr. Frieder's Opinion

Plaintiff first asserts that the ALJ erred in his consideration of Dr. Frieder's opinion. Dr. Frieder and Eric Imbody of Jefferson County Mental Health provided an opinion in December 2010 as to Plaintiff's mental limitations. (Tr. 609-11.) This was in the form of a mental work capacities evaluation indicating that Plaintiff suffered from marked or extreme limitations in most work related activities. (*Id.* 609-10.) The evaluation also stated that Plaintiff suffered from "extremely poor" concentration and that she needed help with even simple tasks at home. (*Id.* 610.) Further, it noted that Plaintiff was "frequently irritable and defensive" with people that she did not know. (*Id.*)

The ALJ gave the opinion "very little weight", noting that "a standard form questionnaire assessing disability in this instance is entitled to little weight." (Tr. 25.) He found that the question of disability is a matter reserved to the Commissioner, and that Dr. Frieder's opinions "are not supported by objective clinical records or other

substantive evidence of record." (*Id.*)  He also stated that "a narrative report is afforded greater weight since it contains the findings, procedures and other conclusions and results whereas the form only contains 'check marks' or references back to the narrative report."  (*Id.*)

I find error with the ALJ's assessment and weighing of Dr. Frieder's opinions.  I first note that the work capacity evaluation at issue was done in connection with Plaintiff's treatment by Dr. Frieder, Mr. Imbody and others at the Jefferson Center for Mental Health ["Jefferson Center"] for depression.  (*See* Tr. 557- 61, 602-61.)  However, the ALJ did not assess whether Dr. Frieder was a treating physician and, if so, whether his opinions were entitled to controlling weight.  *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (In evaluating the medical opinions of a claimant's treating physician, the ALJ "must complete a sequential two-step inquiry, each step of which is analytically distinct").  This is reversible error.  *Id.*

I also find that all three reasons given by the ALJ for giving little weight to Dr. Frieder's opinions are not supported by substantial evidence.  First, the ALJ erred in stating that Dr. Frieder's opinions are on an issue reserved to the Commissioner. Instead, his opinion is a medical opinion that had to be properly weighed and considered under all the relevant factors.  *See Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) ("The Commissioner has defined 'medical opinions' as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite

impairment(s), and [claimant's] physical or mental restrictions.'") (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

Second, I find that the ALJ erred by discounting Dr. Frieder's evaluation on the basis that it was a check the box form rather than a detailed narrative form. It is true that in *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), the Tenth Circuit held that check-box forms—standing alone and unaccompanied by written reports or persuasive testimony—are not substantial evidence. However, *Frey* was distinguished by the Tenth Circuit in the *Carpenter* case, which indicated that such a form from a treating physician, as compared to a nontreating doctor, cannot be discounted merely because it was a check-box form. 537 F.3d at 1267.

Thus, in contrast to the physician in *Frey*, Dr. Frieder actually had examined Plaintiff and recorded his clinical assessments. *Anderson v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009). As noted in *Anderson*, the fact that he recorded his assessments on a form that allowed only "limited clinical comments . . . does not provide a sound foundation for the inference —which the ALJ apparently adopted—that [his] assessments were of limited reliability, nor does it support the notion that the results that [he] reported were based upon something less than 'a thorough physical examination.'" *Id.* (quoting *Carpenter*, 537 F.3d at 1267.) Moreover, the ALJ rejected Dr. Frieder's opinion for being on a check-box form while giving weight to the opinion of state agency physician Dr. Dyde, whose opinion was also on such a form. This was also error. *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) (an ALJ cannot

summarily reject a physician's "reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed").[3]

Finally, I find that the ALJ's finding that Dr. Frieder's opinions in the evaluation "are not supported by objective clinical records or other substantive evidence of record" (Tr. 25) is not supported by substantial evidence. I first note on that issue that the ALJ's finding was conclusory as he failed to state what evidence he was referring to. While "[i]t may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, . . . that is best left for the ALJ himself to do on the proceedings on remand." *Krauser*, 638 F.3d at 1331.

Second, contrary to the ALJ's findings, the clinician progress notes and medical records from Dr. Frieder and others at Jefferson Center document a number of mental health impairments and symptoms related to Plaintiff's depression which provide support for the findings in the evaluation. (*See, e.g.,* Tr. 558-559, 602, 604-06, 613-14.) "A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas v. Barnhart*, No. 04-7191, 2005 WL 2114163, at *4 (10th Cir. Sept. 2, 2005) (unpublished) (quoting *Robinson*, 366 F.3d at 1083). While the ALJ points to other findings such as the fact that Plaintiff "was noted to be alert, cooperative, with normal mood and affect and normal attention span and concentration" at one visit (Tr. 23), he improperly selectively applied the evidence. *Carpenter*, 537 F.3d at 1265 (an ALJ may

---

[3] Indeed, while the ALJ found that Dr. Dyde gave a "detailed explanation . . .with citations to the record" in the check-box form he completed (Tr. 20), the evaluation of Dr. rieder also gave explanations for the findings. (*Id.* 610-11.)

not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quotation omitted).[4] Moreover, the evaluation itself contains medical/clinical findings that support the assessment (Tr. 610), which the ALJ ignored.

In further support of the work capacities evaluation, Dr. Frieder and the other mental health providers at Jefferson Center assessed Plaintiff's GAF score at 43-47, indicative of "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed.2000)).[5] A score of 50 or below suggests that a claimant's impairments are likely to have an effect on his or her ability to work. *Groberg v. Astrue*, 415 F. App'x 65, 70-71 (10th Cir. 2011) (unpublished); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished). The ALJ erred in not discussing this. *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (quotation omitted); *see also Carpenter*, 537 F.3d at 1269.

---

[4] The Commissioner also selectively picks through the evidence in arguing that the treatment records do not support Dr. Frieder's opinion.

[5] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley*, 373 F.3d at 1122 n. 3 (quotation omitted).

Finally, I note that consultative examiner Dr. Thye's opinion (Tr. 563-69) provides support for Dr. Frieder's mental work capacity evaluation. Dr. Thye diagnosed Plaintiff with, among other things, "Major Depressive Disorder, Recurrent, Severe with Mild Visual Hallucinations" and "Cognitive Disorder, NOS, from multiple errors across mental status tasks". (*Id.* 567.) He found marked to extreme impairments in certain areas, and assessed a GAF score of 42. (*Id.* 568.)

The ALJ gave no weight to Dr. Thye's opinion because he concluded that "her [sic] opinion concerning the claimant's mental ability to work is . . . clouded by the claimant's subjective description of his [sic] limitations." (Tr. 25.) I find error with this. *Langley*, 373 F.3d at 1121 (the ALJ may not reject the opinions of a physician "based merely on his own speculative conclusion that [his] report was based only on claimant's subjective complaints"); *Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. July 13, 2006) (unpublished) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence"); *Thomas*, 2005 WL 2114163, *4 ("The ALJ's rejection of a doctor's opinion because he based it, in part, on Mrs. Thomas's responses to his psychological tests involving memory and concentration impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data. . .").[6] Dr. Thye's opinion was based on his examination of

---

[6] I reject the Commissioner's argument that Dr. Frieder's opinion cannot support a finding of disability because he did not state that Plaintiff's impairments are likely to last for 12 months or more as an improper post hoc argument. Moreover, if the record was unclear as to this issue, the ALJ had a duty to

-11-

the Plaintiff which included psychological testing, and his report notes signs and symptoms that supported his findings. Accordingly, there was no legal basis to reject Dr. Thye's opinions, and the ALJ improperly substituted his judgment for that of the doctor.

Based on the foregoing, this case must be remanded for the ALJ to properly weigh and evaluate all the medical evidence in this case. The ALJ should keep in mind on remand that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports 'to see if [they] outweigh[ ] the treating physician's report, not the other way around.'" *Goatcher v. U.S. Dept. of Health and Human Servs*, 52 F.3d 288, 290 (10th Cir. 1995) (quotation and internal quotation marks omitted). Finally, an ALJ's reliance on a state agency physician's opinion is reasonable only insofar as that opinion is supported by evidence in the case record. *Lee,* 117 F. App'x at 687 (citing SSR 96-6P, 1996 WL 374180, at *2). Thus, the state agency consultant's opinion must itself "find adequate support in the medical evidence." *Id*.

---

contact Dr. Frieder on this issue rather than simply discount his opinion. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). Dr. Thye, however, did opine that Plaintiff's ability to sustain acceptable attendance and work without interruptions would be "markedly impaired for at least the next year or so . . . ." (Tr. 568.) To the extent that the Commissioner asserts the ALJ took into account Plaintiff's statement that she stopped working for reasons unrelated to her mental impairments or her inconsistent mental health treatment, these are not valid reasons to reject a medical opinion and medical findings.

### 3. Whether the ALJ Erred With Regard to the Lay Witnesses

Finally, I address Plaintiff's arguments that the ALJ failed to address the testimony from her daughter, Christy Valdez, and that he applied an improper legal standard by analyzing the lay witness statements under Federal Rule of Evidence 701. As to Ms. Valdez, I note that the ALJ specifically stated that he addressed Plaintiff's testimony and letters submitted by her family and friends. (Tr. 22, 25.) He did not, however, state or reference in any way that he addressed the testimony of her daughter. While the Commissioner points to the ALJ's statement that he gave "careful consideration" to the "entire record" and performed a "complete review of the evidence" (*Id.* 21-22), I find the ALJ's failure to reference Ms. Valdez's testimony when he specifically refers to the letters of the other witnesses is troubling and supports an inference that he did not consider Ms. Valdez's testimony.

While an ALJ is not required to make specific written findings about each witness's credibility, that rule applies only "only if 'the written decision reflects that the ALJ considered the testimony.'" *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (quotation omitted). In *Blea*, the ALJ made no mention of the claimant's wife's testimony, "nor did he refer to the substance of her testimony anywhere in the written decision." *Id.* Thus, it was not clear that the ALJ considered her testimony in making his decision. *Id.* Additionally, the wife's testimony was uncontroverted and served to corroborate a psychiatric examination of the claimant. *Id.* Under those circumstances, the court found that "the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's

testimony into his decision." *Id.* The Tenth Circuit further stated, "'[w]ithout the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion[s] . . . [are] supported by substantial evidence.'" *Id.* (quotation omitted). I find this analysis equally persuasive here, particularly given the ALJ's reference to evidence from other lay witnesses, and find that the ALJ's failure to state that he considered Ms. Valdez's testimony is another basis for remand.

Finally, I agree with Plaintiff that the ALJ erred in applying Rule 701 of the Colorado and Federal Rules of Evidence to the opinions/testimony of the lay witnesses. The formal rules of evidence do not apply in administrative hearings, including a social security hearing. *See* 42 U.S.C. § 405(b)(1); *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971); *Gorringe v. Astrue*, 898 F. Supp. 2d 1220, 1225-26 (D. Colo. 2012). I further find that the ALJ's statement that he gave little weight to the witnesses' opinions because "they are not supported by the medical evidence of record during the relevant period" (Tr. 26) is not supported by substantial evidence. Again, the ALJ did not state what medical evidence he was referring to, and the opinions of Drs. Frieder and Thye provide support for their opinions. Thus, the ALJ must reweigh the opinions of the lay witnesses on remand.

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly analyze and weigh the medical evidence in the case, including the opinions of Dr. Frieder. I further find that the ALJ did not properly analyze the lay witness testimony and opinions. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  September 26, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge